IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORI TRAPNELL, | ) | CASE NO. 1:11 CV 905 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Lori Trapnell, for supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Trapnell had severe impairments consisting of degenerative disc disease, degenerative joint disease, a bipolar disorder, and post-traumatic stress disorder.[1] The ALJ made the following finding regarding Trapnell's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours of an 8-hour day; sit for about 6 hours of an 8-hour day; is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; is able to perform

---

[1] Transcript ("Tr.") at 12.

    simple and repetitive tasks, but not is [sic] a fast-paced production environment such as on an assembly line; and is able to have superficial interaction with coworkers and the public throughout the workday.[2]

The ALJ decided that this RFC precluded Trapnell from performing any past relevant work.[3]

    Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Trapnell could perform. The ALJ, therefore, found Trapnell not under a disability.

    Trapnell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Trapnell argues that substantial evidence does not support the RFC finding. Further, Trapnell maintains that the finding of a significant number of existing jobs at step five also lacks the support of substantial evidence because of the incorporation of the allegedly defective RFC into the critical hypothetical posed to the VE.

    The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[2] *Id.* at 13-14.

[3] *Id.* at 17.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[4]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[5]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[6]

---

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[5] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[6] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Substantial evidence in support of the RFC finding**

This case centers on the ALJ's finding that Trapnell could "stand and/or walk 6 hours of an 8 hour day."[7]

As developed through the oral argument held in this case, Trapnell's challenge is a narrow one. Based on a consulting examination performed by Kimberly Togliatti-Trickett, M.D., Trapnell maintains that she should have been limited to no more than 4 hours of standing and/or walking in an 8-hour day. She further argues that because the hypothetical put to the VE did not include this limitation, but instead provided for standing and/or walking 6 hours in an 8-hour day, the finding at step five lacks substantial evidence as well.

Counsel for Trapnell explained during the argument that, contrary to the ALJ's decision, she had treated for her back and knee problems after the onset date of March 15, 2007, with a Dr. Zanoni. Dr. Zanoni's treatment records were not available at the time of the hearing, but counsel was attempting to get them. The ALJ left open the record to receive Dr. Zanoni's records.[8]

Although not expressly reflected in the record, counsel for Trapnell further explained that when it became apparent that Dr. Zanoni's records could not be obtained, the ALJ

---

[7] Tr. at 13.

[8] *Id.* at 51.

-4-

ordered a consultative evaluation, which Dr. Togliatti-Trickett performed. Dr. Togliatti-Trickett's report[9] was received after the hearing but before the ALJ's decision. The ALJ makes extensive reference to that report and gives Dr. Togliatti-Trickett's opinion great weight.[10]

There exists a seeming ambiguity within Dr. Togliatti-Trickett's report. In the narrative, she states that, "the patient should be able to stand and walk for *at least* 4-6 hours at a time."[11] Elsewhere in the report, she checks boxes indicating that Trapnell can stand and/or walk no more than 4 hours in an 8-hour day.[12]

The Commissioner argues that a fair reading of the report under the substantial evidence standard supports that Trapnell could stand and/or walk 6 hours in an 8-hour day. Based on the narrative, Trapnell could stand and walk at least 4/6 hours at a time. If such were the case, the ALJ could fairly find that she was capable of standing and/or walking 6 hours in an 8-hour day. As to the shorter duration indicated by the check-the-box form, the Commissioner argues that the rating contains the qualifier "limited" because of anxiety and complaint of lower back pain.[13] RFC compensates for the anxiety by the mental limitations, which Trapnell does not challenge. As for her subjective complaints of lower back pain,

---

[9] *Id.* at 346-58.

[10] *Id.* at 16.

[11] *Id.* at 348 (emphasis added).

[12] *Id.* at 354.

[13] *Id.*

those must be viewed in light of the ALJ's finding that Trapnell was less than credible,[14] which, again, is not at issue here.

Trapnell, on the other hand, argues that the check-the-box limitations should control because there is objective medical evidence of back problems[15] and knee problems.[16]

As an initial matter, substantial evidence does not support an impairment of the knee as cause for the more stringent limitation on standing/walking. The x-ray cited found only mild osteoarthritis.[17] Dr. Togliatti-Trickett's examination found no erythema, effusion, tenderness, or abnormalities of the knee.[18] Range of motion testing of the knees was within normal limits.[19]

With regard to back problems, the ALJ observed that Trapnell had not sought regular care from a physician since her onset date, and there was little evidence of substantial symptoms. Although Dr. Zanoni may have treated her back problems in the relevant time period, Trapnell never produced his records despite the opportunity to do so.

---

[14] *Id.* at 14.

[15] *Id.* at 266.

[16] *Id.* at 328.

[17] *Id.*

[18] *Id.* at 347.

[19] *Id.* at 352.

Such medical records that do exist come by way of treatment at MetroHealth Hospital from 2007 through 2009.[20] Few of these records relate to treatment for back problems. On April 23, 2007, Trapnell came to the hospital complaining of back pain radiating down the right leg.[21] She denied numbness or tingling in the legs or an inability to ambulate.[22] She received prescriptions for Motrin, Prednisone, and Percocet and instructions to apply ice and heat.[23]

She next presented with a complaint of back pain on December 22, 2007, after falling from a ladder while hanging Christmas lights.[24] Her primary complaints were wrist and chest pain.[25] The physician ordered x-rays of the spine, which disclosed multi-level degenerative disc disease.[26] The MetroHealth records contain no follow up treatment for back problems.

After reviewing this evidence, and closely examining Dr. Togliatti-Trickett's report, I must conclude that a reasonable mind could conclude that her reference to the ability "to stand and walk for at least 4-6 hours at a time," expressed in her own words, must control over the check marks in the medical source statement form arguably placing a maximum

---

[20] *Id.* at 180-290.

[21] *Id.* at 277.

[22] *Id.*

[23] *Id.* at 274-76.

[24] *Id.* at 263.

[25] *Id.*

[26] *Id.* at 267.

four-hour limit on standing and walking in an eight-hour day. The other medical evidence in the record does not support that latter limitation, nor do her activities, which include shooting pool and bowling. The RFC finding must be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Trapnell had no disability. Accordingly, the decision of the Commissioner denying Trapnell supplemental security income is affirmed.

IT IS SO ORDERED.

Dated: September 27, 2012                     s/ William H. Baughman, Jr.
                                              United States Magistrate Judge